### APPEAL OF GEORGE THEIS, JR.

Docket No. 3958.    Submitted November 11, 1925.    Decided March 12, 1926.

1. Cost of certain bonds determined for purposes of computing gain or loss on the sale thereof.

2. Taxpayer transferred certain bonds and gave his check in payment for certain preferred stock, which was to be held until he received cash for the bonds and was then to be presented for payment. *Held*, that the transaction in which he received cash for the bonds amounted to a sale thereof and not an exchange of bonds for preferred stock and cash.

*Nelson T. Hartson, Esq.*, for the taxpayer.
*E. C. Lake, Esq.*, for the Commissioner.

Before Graupner and Trammell.

This is an appeal from the determination of a deficiency in income tax for 1917 in the amount of $48,537.10. The deficiency arose from the action of the Commissioner in attributing to the taxpayer a gain resulting from the sale of certain bonds of the Arkansas Valley Interurban Railway Co.

### FINDINGS OF FACT.

1. The taxpayer is an individual residing at Wichita, Kans. During the times mentioned herein he was a stockholder and director of the Arkansas Valley Interurban Railway Co. and its president since July, 1913.

2. During the period from 1913 to January 19, 1917, the taxpayer acquired bonds of the said Railway Company of a par value of $453,800. A substantial portion of the bonds acquired were purchased from the Interurban Construction Co., which had received the bonds from the said Railway Company in payment for construction work.

The taxpayer was also a stockholder in the said Construction Company. He purchased said bonds from the Construction Company and other parties at various times, at prices ranging from 50 to 85 per cent of the par value. The said bonds acquired by the taxpayer from December 29, 1913, to January 19, 1917, are shown by the books of the taxpayer as follows:

| Date. | From— | Par value. | Per cent. | Book cost. |
|---|---|---|---|---|
| Dec. 29, 1913 | Const. Co | $800.00 | 70.00 | $560.00 |
| Dec. 31, 1913 | do | 18,000.00 | 50.00 | 9,000.00 |
| Jan. 16, 1914 | Holmes | 1,500.00 | 60.00 | 930.00 |
| Do | Const. Co | 1,500.00 | 50.00 | 750.00 |
| Mar. 10, 1914 | Elen | 300.00 | 65.00 | 195.00 |
| Apr. 9, 1914 | Boyle | 700.00 | 65.00 | 455.00 |
| June 24, 1914 | Const. Co | 6,600.00 | 65.00 | 4,290.00 |
| Dec. 26, 1914 | do | 16,500.00 | 70.00 | 11,550.00 |
| Feb. 28, 1915 | do | 4,000.00 | 70.00 | 2,800.00 |
| Mar. 31, 1915 | do | 100.00 | 24.14 | 24.14 |
| Apr. 30, 1915 | do | 14,300.00 | 85.00 | 12,155.00 |
| June 3, 1915 | Davidson | 10,000.00 | 75.00 | 7,500.00 |
| Do | A. V. T. R. R | 25,800.00 | 100.00 | 25,800.00 |
| June 15, 1915 | Wier | 2,000.00 | 80.00 | 1,675.00 |
| June 22, 1915 | George | 10,000.00 | 90.00 | 9,000.00 |
| Sept. 7, 1915 | Const. Co | 9,400.00 | 85.00 | 7,990.00 |
| Oct. 31, 1915 | Sims | 100.00 | ---------- | 50.00 |
| Sept. 28, 1915 | Kans. Natl | 1,000.00 | 78.00 | 780.00 |
| Oct. 3, 1915 | do | 20,000.00 | ---------- | 16,000.00 |
| Dec. 31, 1915 | Const. Co | 10,300.00 | 85.00 | 8,755.00 |
| Jan. 12, 1916 | do | 72,100.00 | 85.00 | 61,285.00 |
| Jan. 13, 1916 | do | 11,300.00 | 85.00 | 9,605.00 |
| Do | do | 144,000.00 | (1) | 69,477.00 |
| June 8, 1916 | Price | 5,000.00 | ---------- | 4,951.50 |
| Dec. 29, 1916 | A. V. I. Ry | 48,500.00 | ---------- | 48,500.00 |
| Jan. 19, 1917 | Rogers | 20,000.00 | ---------- | 20,000.00 |
| | | $453,800.00 | ---------- | $334,077.64 |

1 Liquidation.

The Interurban Construction Co. was liquidated in 1916. Its assets, consisting of bonds of the said Railway Company, were distributed to the stockholders in proportion to their holdings. The taxpayer held stock of the Construction Company which cost him $69,477.00, for which, on January 13, 1916, he received bonds of the Railway Company of the par value of $144,000 in said liquidation. The book entry of said transaction is that shown above as of January 13, 1916.

3. The outstanding bonds of the said Railway Company amounted to $1,303,000, maturing in the year 1919. In 1916 steps were taken to arrange for refinancing the Railway Company in order to pay off the said bonds. On October 25, 1916, it made an agreement with a certain financial house to take an entire issue of mortgage bonds of the par value of $900,000. As this amount was insufficient to retire the old bonds, it became necessary to issue $500,000 preferred stock which should net to the corporation $89.32 per share to take care of the balance of the old mortgage indebtedness. It was agreed between the Railway Company, the stockholders, and the financing firm that the said firm would purchase $100,000 of the preferred stock at $89.32 per share and that the stockholders of the Railway Company, which included this taxpayer, would subscribe to the remaining $400,000 at $89.32, but the financing firm was to have an option on the latter stock at the same price, which option they would exercise if the sale of the first allotment was successful. The taxpayer subscribed for $200,000 of the preferred stock and the balance was subscribed by other stockholders. The said stock was placed in escrow, however, pending the outcome of the sale of the first $100,000 and the exercise of the option by the financing firm.

The said firm installed their headquarters at Wichita, Kans., placed their best salesmen in the field, and conducted an intensive campaign to sell the preferred stock at $95 and $96 per share. They were able to sell only $30,000 of their $100,000 preferred stock. They thereupon abandoned the selling campaign, refused to exercise their option on the remaining $400,000, and sold the balance of their stock on hand to the taxpayer at $80 per share. Upon the refusal of the financial firm to take the balance of the preferred stock, the stockholders, as a part of the refinancing scheme, did so. There was no actual market for the preferred stock, and neither the taxpayer nor any of the stockholders were able to sell their preferred stock on the market.

4. The taxpayer, on January 22, 1917, gave his check for $178,640 for $200,000 par value of the said preferred stock, which was at the rate of $89.32 per share. This amount was fixed as the selling price, without reference to its value, because at that amount per share the amount of money which was required would be raised. At the time of the issuance of the check for the preferred stock there were in-

sufficient funds in the bank to the credit of the taxpayer to meet it, but it was agreed between the parties that it should be held until the taxpayer received his money for the old bonds he owned. Upon the payment of the bonds, January 29, 1917, the check for the preferred stock was paid and the stock delivered. For the bonds he held the taxpayer received $453,800, in two payments, as follows: January 29, 1917, $325,000; February 6, 1917, $128,800.

5. The Commissioner determined the profit from the transaction as follows:

| | |
|---|---|
| Received from bonds | $453,800.00 |
| Paid for bonds | 319,073.83 |
| Profit | 134,726.17 |

The actual cost of the bonds was as set out in the statement taken from the taxpayer's books, except those which were purchased on December 31, 1913, and on June 16, 1914. The books show that the $18,000 par value were purchased at 50 per cent and that $1,500 par value were purchased at 50 per cent. Sixty per cent was the actual value at that time. The difference of 10 per cent was allowed by the Construction Company to the taxpayer in the nature of a dividend. The company by resolution permitted its stockholders to acquire the bonds at less than market in lieu of declaring dividends.

OPINION.

TRAMMELL: We are to determine the basis upon which to compute the gain, if any, realized from the transaction as set forth in the findings of fact. There is a question of fact as to the cost of the bonds to the taxpayer, and a further question as to whether the transaction wherein the taxpayer acquired the preferred stock was a purchase or in part an exchange.

We will consider the last question first. The taxpayer contends that, in fact, he received as part payment for the bonds preferred stock of the par value of $200,000, to which he was forced to subscribe as a part of the refinancing scheme, and that the market value of this stock was substantially less than par. In our opinion the acquisition of the preferred stock was an independent and separate transaction. The taxpayer, in substance as well as in form, actually received in cash $453,000 for his bonds. His disbursement of a portion of this money for the preferred stock is another transaction, however close together in point of time the two transactions might have been. While it was a part of the refinancing scheme that the stockholders would subscribe for and take the preferred stock, this was not a requirement imposed upon or accepted by the bondholders of the old bond issue. There appears no evidence that they agreed

to accept preferred stock in exchange for bonds. The stockholders agreed to take the preferred stock. As a bondholder the taxpayer was under no obligation to take any preferred stock in exchange for his bonds. If it was necessary for the taxpayer to get funds from the sale of bonds with which to carry out his obligation to take preferred stock, that fact does not constitute the transaction an exchange of bonds for stock. With this view of the transaction, it is not necessary to consider the market value of the preferred stock at that time.

This leaves solely for consideration the question of the cost to the taxpayer of the bonds. In his original petition he alleges the cost to be $319,073.83, which is the cost used by the Commissioner in computing gain. This cost is based on an average rate of 70 per cent plus. In his amended petition the cost is alleged to be $405,-432.69. In his brief the taxpayer states that, if the bonds purchased from the Construction Company were computed at $80, the cost would be $396,026.50, and if figured at $85, the cost would be $398,401.50.

It was stipulated that the books of record of the taxpayer showed that the bonds purchased by the taxpayer from December 19, 1913, to and including January 1, 1917, cost the amounts set out in the findings of fact, and that the total actual cost was $334,077.84. It was claimed by the taxpayer that the Construction Company, in lieu of declaring dividends and distributing its earnings in that way, decided to sell its bonds to its stockholders at a price below market, and that the difference between the market price and the price at which they were sold represented the distribution of profits. From the evidence we are of the opinion that, with respect to certain of the bonds, this contention of the taxpayer is sustained. The $18,000 par value of bonds acquired by the taxpayer on December 31, 1913, at 50 per cent were actually worth at least 60 per cent of par. This being true, the cost of the bonds appearing in the statement taken from the books, set out in the findings of fact, should be increased. The cost of the $18,000 par value purchase of bonds on December 31, 1913, should be stated at $10,500 instead of $9,000, and the $1,500 par value bonds purchased on January 16, 1914, which appear on the books to have cost the taxpayer $750, actually cost him $900. The cost of the bonds, therefore, should be increased by the amount of $1,950, on account of the fact that they were acquired partly by way of a distribution of profits and partly by an actual purchase.

It also appears that the bonds acquired on January 13, 1916, at a book cost of $69,477, were received on that date in liquidation. The Interurban Construction Co. was liquidated in 1916. It had assets consisting of bonds of the Railway Company which were distributed in proportion to the stock holdings. The $69,477 appearing

as the book cost of these bonds was in fact the cost of the stock which the taxpayer held in the company which was liquidated. In the liquidation the taxpayer received taxable gain to the extent of the difference between the purchase price of his stock and the fair market value of the bonds received in liquidation. The value of the bonds received in liquidation we find from the evidence to have been 85 per cent. This value is found from the fact that the bonds were selling at 85 per cent at and near the date of the liquidation. The receipt of the bonds in liquidation was a separate and closed transaction, and creates a new basis for the determination of gain or loss on the sale of the bonds. This would make the cost of the $144,000 par value of bonds $122,000 instead of $69,477, an increase of $52,923. This amount and $1,950 should be added to the amount of $334,077.64, appearing on the books of the taxpayer, to determine the tax liability resulting from the sale of the bonds.

*Order of redetermination will be entered on 15 days' notice, under Rule 50.*

On reference to the Board, LANSDON did not participate.